Lauren David NORSWORTHY *v.* Suzanne NORSWORTHY

86-97 713 S.W.2d 451

Supreme Court of Arkansas
Opinion delivered July 14, 1986

*Rose Law Firm, A Professional Association*, by: *Richard T. Donovan*, for appellant.

*Saxton & Ayres*, by: *Clint Saxton*, for appellee.

STEELE HAYS, Justice. This appeal involves the Uniform Child Custody Jurisdiction Act (Ark. Stat. Ann. § 34-2701, et seq. Supp. 1985) and the Parental Kidnapping Prevention Act of 1980 (Pub. L. 96-611, 28 USC § 1738A). Appellee Suzanne Norsworthy and Appellant Lauren Norsworthy married in Harris County, Texas in August of 1977. A year later a daughter, Darlah, was born. In 1984 Suzanne filed suit for divorce in Harris County. On April 10, 1984 a temporary order giving Suzanne custody was entered by agreement. On June 1, 1985 Suzanne moved with Darlah to Crittenden County, Arkansas, where Suzanne's father lived.

On September 19, 1985 Lauren Norsworthy called Suzanne to say he was coming to Arkansas and would like to visit Darlah. The next day he filed suit for divorce and custody in Henderson County, Texas and on September 21, as planned, he obtained custody of Darlah ostensibly for a brief visit. Instead of returning Darlah to her mother he took her to Texas, placing her in the custody of his brother, Gaylon Norsworthy. On September 24 Suzanne was served with process in Arkansas in the Henderson County suit. Suzanne promptly filed suit for divorce and custody in Crittenden County.

In response to the Arkansas proceedings, Lauren challenged jurisdiction in a motion to dismiss, citing Ark. Stat. Ann. § 34-2706(a), which provides that a court shall not exercise its jurisdiction if there is a pending proceeding in another state. In the alternative the Arkansas court was asked to stay its proceedings until the Texas court determined if it had jurisdiction.

The Arkansas court entered an order finding that Suzanne had temporary custody of Darlah pursuant to the order of the District Court of Harris County, Texas. The order recited that Lauren had obtained custody of Darlah by subterfuge, and that Arkansas had jurisdiction pursuant to Ark. Stat. Ann. § 34-2703(a)(2). The order denied the motion to dismiss, directed the immediate return of Darlah to Arkansas, and set a hearing for October 16. On October 16 Suzanne petitioned for a contempt

citation against Lauren for failure to return Darlah and the chancellor ordered him to appear on October 30 to show cause why he should not be held in contempt.

On October 21 Suzanne amended her complaint to ask for alimony, child support and attorneys' fees. Lauren sought a writ of prohibition from this court to prevent the chancellor from asserting jurisdiction in the Crittenden County proceedings. That petition was denied and on November 6 Lauren Norsworthy was held in contempt for his failure to return Darlah to Suzanne. A punishment of ninety days in jail was imposed.

The chancellor entered a decree of divorce finding that pursuant to Ark. Stat. Ann. § 34-2703(a)(2), Arkansas has jurisdiction to determine the custody of Darlah and is the most convenient forum under § 34-2707. Suzanne was awarded custody, child support and attorneys' fees.

■ Lauren Norsworthy has appealed on two points of error: Arkansas was without jurisdiction to adjudicate the custody of Darlah pursuant to Ark. Stat. Ann. § 34-2706(a) and the chancellor erred in refusing to stay the proceedings in order to communicate directly with the District Court of Henderson County, Texas, as provided in Ark. Stat. Ann. § 34-2706(c). Neither brief cites the Parental Kidnapping Prevention Act, which must be read in conjunction with the Uniform Child Custody Jurisdiction Act, as where the two acts conflict, the preemptive Parental Kidnapping Prevention Act controls. *Leslie L.F.* v. *Constance F.*, 110 Misc. 2d 86, 441 N.Y.S.2d 911 (Fam.Ct. 1981).

■ Appellant cites § 34-2706(a):

A court of this State shall not exercise its jurisdiction under this Act [§§ 34-2701—34-2725] if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this Act, unless the proceeding is stayed by the court of the other state because this State is a more appropriate forum or for other reasons.

He contends that because a suit for Darlah's custody was pending in the District Court of Henderson County filed on September 20, 1985, the Chancery Court of Crittenden County must dismiss the

custody suit filed there by Suzanne a week later. We readily reject that contention for several reasons: first, it is not at all evident from this record that the District Court of Henderson County was exercising jurisdiction "substantially in conformity with" the Uniform Child Custody Jurisdiction Act (§ 34-2706(a)). There had been, it is true, a suit pending in *Harris County* which clearly constituted an exercise of jurisdiction in conformity with the act, though what the present status of that proceeding is, is not entirely clear. The briefs indicate that the case was dismissed in 1984 for failure to prosecute. Be that as it may, we have no basis for knowing what jurisdictional claims, if any, Henderson County may have had on September 20, 1985, when Mr. Norsworthy filed his suit there, or, indeed, whether under the venue laws of Texas, Henderson County was the proper place to decide the custody of Darlah Norsworthy. So far as we can determine from the record Darlah had never been to Henderson County.[1] Certainly we are told nothing about the connection Henderson County may, or may not, have had with this family for purposes of qualifying as an appropriate forum to decide Darlah's custody under the act. Ark. Stat. Ann. § 34-2701(a)(3).

Secondly, while not controlling, the manner by which Henderson County is assertedly empowered with jurisdiction under the act to decide Darlah's custody to the exclusion of Arkansas is of some significance. One of the primary objectives of the Uniform Child Custody Jurisdiction Act is to "deter abductions and other unilateral removals of children undertaken to obtain custody awards" (See Ark. Stat. Ann. § 34-2701(a)(5)). That objective would be thwarted in blatant fashion if Mr. Norsworthy could achieve the summary dismissal of Mrs. Norsworthy's suit in Arkansas by the methods he employed in attempting to invest jurisdiction in the Henderson County District Court, methods which the act was plainly designed to discourage. See *Davis* v. *Davis*, 285 Ark. 403, 687 S.W.2d 843 (1985). The act expressly directs that it be construed to promote the general purposes enumerated in § 34-2701 and on that basis alone we would be loath to reverse on this argument. Whether Mrs. Norsworthy is subject to the same criticism for the unilat-

---

[1] We note independently of the record that Harris County includes the city of Houston while Henderson County is adjacent to the City of Dallas.

eral removal of Darlah from Texas to Arkansas without approval from the Harris County District Court, we could not say on the state of this record. We note only that Mr. Norsworthy seems to have voiced no complaint at the time.[2]

While we reject appellant's first point, we must agree with his alternative argument, that the Arkansas chancellor erred in declining to implement those provisions of the act intended to promote cooperation between the courts of two or more states concerned with the custody of a particular child. While all of the nine objections listed in § 34-2701 deal with these common objectives, sub-paragraphs (1), (2), (7) and (8) are specific:

(a) The general purposes of this Act . . . are to:

(1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(7) facilitate the enforcement of custody decrees of other states;

(8) promote and expand the exchange of information and other forms of mutual assistance between the courts of this State and those of other states concerned with the same child.

In reaching this view, we are influenced by the fact that when the Crittenden County suit was filed Texas was still the home state of Darlah as defined by the Uniform Child Custody Jurisdiction Act (Ark. Stat. Ann. § 27-2702(5)) and by the Parental Kidnapping Protection Act, six consecutive months not having expired preceding the time involved. Under the federal act

---

[2] The record reflects that six weeks after Suzanne and Darlah left Texas, Lauren wrote Suzanne: "Although the miles may separate us, I have built a bridge of lovely memories. I would like to express my deepest appreciation and thanks for your years of patience, cheer, devotion, companionship, mother of *our precious daughter*, and most of all your friendship." (Emphasis in the original).

jurisdiction is given the home state to the exclusion of other jurisdictional considerations. 28 USC 1738A(4).

 We are not overlooking the finding in the decree that Arkansas has jurisdiction to determine custody under Ark. Stat. Ann. § 34-2703(a)(2) because it is in the best interest of the child that a court of this state assume jurisdiction since the child and her parents, or the child and at least one contestant, have "a significant connection" with this state, and there is "available in this state substantial evidence concerning the child's present and future care, protection, training, and personal relationships." But that provision, while broad, must be judiciously applied, and it should not be regarded as giving a court only recently involved an excuse to act precipitously, in an ex parte proceeding, by disregarding the remainder of the act, so plainly aimed at promoting cooperation between courts. Particularly is that true where, as here, Texas clearly remained the home state. In a similar circumstance the court in *Bowden* v. *Bowden*, 182 N.J. Sup. 307, 440 A.2d 1160 (1982), observed:

> [§ 34-2706(a)] was designed to avoid jurisdictional "shouting matches," and has been used successfully to accomplish that end. See *William* v. *Michele*, 99 Misc.2d 346, 416 N.Y.S.2d 477, 483 (Fam.Ct. 1979). The section is mandatory, i.e., the statute directs that, once informed, the court "shall stay the proceeding and communicate with the court in which the other proceeding is pending." This the trial judge did not do. Cooperatively, the courts should attempt to reach agreement as to the more appropriate forum, with the ultimate aim of providing protection and control, in both states, to assure compliance with custody and visitation orders entered in one of them. Following a final judgment or decree containing specific terms for custody and visitation or joint custody as appropriate, the goal of the nonforum jurisdiction should be imposition of reciprocal rather than conflicting provisions.

Some guidance is to be found in *Bonis* v. *Bonis*, 420 So.2d 104 (C.A. Fla. 1982) where Florida and Colorado had competing interests in a child custody dispute. The Florida appeals court reversed the trial court for assuming jurisdiction on the basis of a "significant connection" to the child even though the father was

found to have "snatched" the child from Florida, where a custody suit was pending, and to have returned to Colorado where a previous suit had been filed, though no service of process had. The Florida court said:

> Four stated purposes of the UCCJA are to (1) avoid jurisdictional competition and conflict with courts of other states in matters of child custody; (2) promote cooperation with the courts of other states to the end that a custody decree is rendered in the state which can best decide the case in the interest of the child; (3) avoid relitigation of custody decisions of the other states; (4) make the law uniform with respect to child custody jurisdiction among states which have adopted the act. *Those purposes are not served when a court, with knowledge that the subject matter of child custody is pending in another state, totally ignores the foreign proceeding and exercises jurisdiction over a child, who has been in the state for less than a month, for the purpose of making a permanent custody award.* (Our italics).

Mrs. Norsworthy relies on *Pomraning* v. *Pomraning*, 13 Ark. App. 258, 682 S.W.2d 775 (1985), where the Arkansas chancellor's finding of jurisdiction was upheld despite the fact that the appellee wife and children had resided in Arkansas for less than the required time under the "home state" provision. The Court of Appeals noted that Arkansas had been the home of the wife until 1979 when she married the appellant in Louisiana, that when the parties separated she immediately returned to Arkansas with the children where she sought a divorce and custody after two months of renewed residency. The cases are distinguishable—there was nothing pending in Louisiana when the Arkansas suit was tried and, hence, no request was made for Arkansas to communicate with a Louisiana court before determining which forum was appropriate. Nor do we find any reference in *Pomraning* to the Parental Kidnapping Protection Act, and presumably neither party cited it. As we have noted, under the Parental Kidnapping Protection Act, the home state has exclusive jurisdiction over the other considerations noted in *Pomraning*. See Child Custody and Visitation Law and Practice, McCahey, Kaufman, Krant and Zett, Vol. 1 (1986) § 4.06 [1][2][3].

■ We think, therefore, it was incumbent on the Arkansas court before proceeding to a final decree, to enter into direct communication with one or both District Courts in Texas to determine, in accordance with the act, which was the better forum to decide custody.

■ Appellant's argument that he had made only a special appearance to object to jurisdiction is rejected. He sought affirmative relief in the Crittenden Chancery Court in the form of a stay of the proceedings so that courts of Texas and Arkansas can have direct communication in accordance with the Uniform Child Custody Jurisdiction Act. He cannot argue that by so doing he remained beyond the jurisdictional powers of the Crittenden Chancery Court. "This court has adopted the rule that any action on the part of the defendant, except to object to the jurisdiction, which recognizes the case as in court, will amount to a general appearance." *Payne* v. *Stockton*, 147 Ark. 598, 229 S.W. 44 (1921).

Accordingly, we modify the provision of the decree pertaining to permanent custody and remand the case for further proceedings in accordance with the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act.

Modified and remanded.