Loretta ROGERS, Appellant,

v.

Charles ROGERS, Appellee.

No. S–6740.

Supreme Court of Alaska.

Dec. 8, 1995.

---

Michael Gershel, Carol H. Daniel, Alaska Legal Services Corporation, Anchorage, for Appellant.

Charles D. Rogers, pro se, Gepp, Arkansas.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

## OPINION

COMPTON, Justice.

Loretta Rogers appeals the superior court's decision to decline exercising jurisdiction over this child custody proceeding. We reverse.

### I. FACTS AND PROCEEDINGS

Loretta Rogers and Charles Rogers were married in January 1990. They have one child, Joshua, born in Arkansas in December 1989. Loretta has an older daughter, Amanda, from a prior marriage. In July 1990, when Joshua was seven months old, the family moved to Louisiana. In November 1991 they moved to Alaska.

Loretta and Charles separated in the fall of 1993. On November 7, 1993, Loretta took Joshua and Amanda to Arkansas to stay with Loretta's parents, and then returned to Alaska. Loretta planned for the children to return to Alaska shortly before Christmas, and provided her parents with return tickets for both children. Loretta's parents, however, refused to return the children.

On February 22, 1994, while still living in Alaska, Charles filed a divorce and custody complaint in Arkansas. He moved to Arkansas sometime after this.

On March 15, 1994, Loretta filed a complaint in superior court in Anchorage, seeking a divorce and custody of Joshua. The superior court concluded, after speaking with the judge presiding over the Arkansas proceeding, that Arkansas was a more convenient forum for the child custody proceeding.[1] It declined to exercise jurisdiction over the custody issue.

## II. DISCUSSION

### A. The Superior Court Has Jurisdiction to Make a Child Custody Determination

Jurisdiction over child custody proceedings is governed by the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A,[2] and the Uniform Child Custody Jurisdiction Act (UCCJA), codified in Alaska at AS 25.30.010–.900. If the two statutes conflict, the PKPA pre-empts the UCCJA. *Murphy v. Woerner*, 748 P.2d 749, 750 (Alaska 1988); *Atkins v. Atkins*, 308 Ark. 1, 823 S.W.2d 816, 819 (1992).

Under the UCCJA, a court has jurisdiction to make a child custody determination if, *inter alia*, the state in which the court sits is the child's home state, or had been the child's home state "within six months before commencement of the proceeding … and a parent … continues to live in [the] state." AS 25.30.020(a)(1)(B); *accord* Ark.Code Ann. § 9–13–203(a)(1). "Home state" is defined in part as "the state in which the child, immediately preceding the time involved, lived with the child's parents, a parent or a person acting as parent, for at least six consecutive months." AS 25.30.900(5); *accord* Ark.Code Ann. § 9–13–202(5). Jurisdiction under the UCCJA is determined as of the date the custody proceeding is commenced. *Wanamaker v. Scott*, 788 P.2d 712, 714 n. 3 (Alaska 1990); *accord Rodriguez v. Saucedo*, 3 Ark. App. 42, 621 S.W.2d 874, 877 (1981).

Joshua lived in Alaska with his family for twenty-four consecutive months, from November 1991 to November 1993. Loretta sent Joshua and Amanda to Arkansas on November 7, 1993 and filed her complaint on March 15, 1994. Loretta still lives in Alaska. Thus the superior court has jurisdiction to make a child custody determination, because Alaska was Joshua's home state within six months of the commencement of the proceeding. *See* AS 25.30.020(a)(1)(B).

Furthermore, the superior court could exercise this jurisdiction even though Charles filed his complaint in Arkansas before Loretta filed hers in Alaska. Under the UCCJA, a court may not exercise jurisdiction if a custody proceeding is already pending in another state, assuming that state has jurisdiction over the case. *See* AS 25.30.050(a). The PKPA, however, pre-empts this "first in time" provision, and grants exclusive jurisdiction to the child's home state.[3] 28 U.S.C. § 1738(a), (c)(2)(A) and (B)(i); *see Atkins*, 823 S.W.2d at 819 ("[T]he principal distinction between the UCCJA and the PKPA is that the PKPA gives *exclusive jurisdiction* to the child's *home state*…. When the UCCJA and PKPA conflict, the pre-emptive federal PKPA controls.") (emphasis in original). Thus, we need not resolve the factual question of whether Arkansas could exercise jurisdiction under its UCCJA.[4] Because

---

1. AS 25.30.060(d) provides,

   Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.

2. Charles argues that the PKPA only applies to cases involving parental kidnapping. Even a cursory reading of the statute indicates its reach is much broader. It has often been applied in situations where parental kidnapping is not an issue, *see, e.g., Wanamaker v. Scott*, 788 P.2d 712 (Alaska 1990); *Atkins v. Atkins*, 308 Ark. 1, 823

S.W.2d 816 (1992). Charles cites to no case limiting the PKPA in the manner he suggests.

3. The PKPA's definition of "home state" is substantively the same as the definition of "home state" in Alaska's and Arkansas' UCCJA. *Compare* 28 U.S.C. § 1738A(b)(4) *with* AS 25.30.900(5) *and* Ark.Code Ann. § 9–13–202(5).

4. In addition to home state jurisdiction, Arkansas' UCCJA provides that a court may make a child custody determination if

   [i]t is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one (1) contestant, have a significant con-

Alaska was Joshua's home state at all relevant times,[5] Alaska's jurisdiction is exclusive. *See Norsworthy v. Norsworthy,* 289 Ark. 479, 713 S.W.2d 451, 455 (1986) ("Under the federal act jurisdiction is given the home state to the exclusion of other jurisdictional considerations.").

### B. *The Superior Court Abused Its Discretion in Declining to Exercise Jurisdiction*

The UCCJA allows a court to decline jurisdiction if it finds that it is an inconvenient forum and that a court of another state is a more convenient forum.[6] AS 25.30.060(a). In determining whether it is an inconvenient forum, the court must "consider if it is in the interest of the child that another state assume jurisdiction." *Id.* at .060(c). To this end, the court may take into account the following factors:

(1) if another state is or recently was the child's home state;

(2) if another state has a closer connection with the child and the child's family or with the child and one or more of the contestants;

(3) if better evidence concerning the child's present or future care, protection, training, and personal relationships is available in another state, or if equally substantial evidence is more readily available in another state;

(4) if the parties have agreed on another forum which is no less appropriate; and

(5) if the exercise of jurisdiction by a court of this state would contravene any of the [UCCJA's stated purposes].

*Id.* at .060(c)(1)–(5). We review *forum non conveniens* decisions for abuse of discretion.

*Pinneo v. Pinneo,* 835 P.2d 1233, 1235 (Alaska 1992).

▮ The superior court concluded it would be "much less inconvenient" for Loretta to travel to Arkansas than for Charles and the children to travel to Alaska. The court considered it significant that Loretta sent the children to Arkansas while she and Charles "were having severe domestic problems." The court did not specifically reference any of the statutory factors, nor did it explain why declining jurisdiction was in Joshua's best interest.

Our review of the record convinces us that the superior court abused its discretion in declining to exercise jurisdiction. Every relevant statutory factor points to Alaska as the most convenient forum for Joshua's custody proceeding. Alaska was Joshua's home state when the proceeding commenced. Alaska has the closest connection with Joshua. He and his family lived here for over two years, or half of Joshua's life, before Loretta sent Joshua and Amanda to Arkansas, a mere three months before Charles filed his complaint. Alaska is most likely where the best evidence concerning Joshua's care, protection, and personal relationships is available.

▮ The superior court erred in basing its decision exclusively on which party it felt would be more inconvenienced by the requisite travel to a non-local forum. While the "relative hardship in appearing in non-local forums" is a relevant consideration, *Szmyd v. Szmyd,* 641 P.2d 14, 19 (Alaska 1982), the central focus of any *forum non conveniens* inquiry is "which forum is best in light of the *child's* best interest." *Id.* at 20 (emphasis in original). We conclude that it is in Joshua's

---

nection with this state and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships. Ark.Stat.Ann. § 9–13–203(a)(2). Alaska's UCCJA does not contain this provision.

**5.** Since Joshua had only been in Arkansas for four months when Charles filed his complaint, Arkansas did not have home state jurisdiction. *See* Ark.Stat.Ann. § 9–13–202(5) (defining "home state" to mean at least six consecutive months of residency).

**6.** The PKPA contains a similar provision. *See* 28 U.S.C. § 1738A(c)(2)(D). Arkansas could exercise jurisdiction under the PKPA if Alaska declined to exercise jurisdiction and if Arkansas' exercise of jurisdiction was in Joshua's best interest. *Id.* Thus, the PKPA does not require Alaska to take jurisdiction; but if Alaska does take jurisdiction, then it takes exclusive jurisdiction.

best interests for the custody proceeding to take place in Alaska.[7]

## III. CONCLUSION

We REVERSE the superior court's order declining jurisdiction and REMAND this case for further proceedings.

---

7.  Charles argues that a complete *forum non conveniens* analysis must include a consideration of what is best for Amanda, Loretta's child from a previous marriage. While the family's connections to a forum are a factor to be considered in deciding which forum is most convenient, AS 25.30.060(c)(2), Charles has not shown, nor do we see, how *Amanda*'s contacts with Arkansas are so substantial that the superior court should decline to exercise jurisdiction over *Joshua*'s custody proceeding. Amanda's custody is not at issue in the Alaska proceeding.